UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SHEILA WOLK
           Plaintiff,         )

Vs.                   )

KODAK  IMAGING NETWORK, INC.,    )
EASTMAN KODAK COMPANY,  and     )
PHOTOBUCKET.COM, INC.          )
           Defendants.       )

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 11/2/10

Civil Case No. 1:10-CV-04135-RWS-FHK

PRO SE OFFICE

## RESPONSE TO DEFENDANT PHOTOBUCKET'S OPPOSITION TO PLAINITFF'S  EMERGECY MOTION FOR PRELIMINARY INJUNCTION

In the light of Judge Wood's decision in *LimeWire*  (*Arista Records v. Line Group*, 2010 U.S. Dist. LEXIS 46638) this Court must find that there is a high likelihood that the Plaintiff will prevail and that irreparable harm is being and will continue to be imposed upon her.

The Plaintiff does not agree or subscribe to the Summary of Facts that Photobucket presents.  Her copyrighted images remain displayed on Photobucket even now when Photobucket admits to actual and specific knowledge of her images (See affidavit of Ms. Wolk filed herewith).  Nor does she agree that her notices or the notices of her attorney, Gordon Black, were in any way deficient.

Further, the Plaintiff does not agree that Photobucket is protected by the safe harbor provisions once it supplies Kodak specific copyrighted images of the Plaintiff that Kodak has and does make into products and thereby Photobucket directly shares in the profits gleaned from the sale of those products.  (Section 5129(c)(1)(B)).  It is well

1

copyrighted image. Ms. Wolk's response was the same again and again and again: "But I don't copyright URLs. I copyright my artwork, sir." (page 260, line 4).   The distinction that Photobucket wants this Court to read into the law is that it is the URL not the Plaintiff's copyrighted image that is important.   That is not what the law requires and it would completely eviscerate the copyright act if this Court accepts that argument.

It seems that this Court must decide what the DMCA means when it states in 512(c) 2: "identification of the copyrighted work claimed to have been infringed" and (3) identification of the material that is claimed to be infringing . . ."  Do these words mean provide a URL each and every time the service provider infringes on the same image?  Or does it mean once the service provider has been advised of the specific image and the specific artist as in this case the duty falls then to the service provider?   The Plaintiff argues that the words "work" and "material" in these sentences are dispositive.  The law is identifying the copyrighted "work" or "material" not a digital notation in computer language.  Had Congress wished to require a URL it would have so stated and this Court should not read into the law such requirements.  While a URL maybe one way to notify Photobucket, the actual image and specific identification is also acceptable. Further, this reading is consistent with the overall structure of the law that makes Photobucket liable up to $150,000 for *each image* (or "work") it infringes, *not the number of times* it may infringe that specific image. Neither *Viacom*[1] or *UMG*[2] relied upon by Photobucket find differently. The Plaintiff has relied on *Viacom* in support of its original brief.  *UMG* is factually different to the instant case:  (1) Veoh in *UMG* did not directly profit from the infringement; (2) the Court found that UMG did not directly notify Veoh; (3) but most

---

[1] *Viacom International, Inc. v. Youtube, Inc.* 2010 U.S. Dist, LEXIS 62829.
[2] *UMG Recordings, Inc. v Veoh Networks, Inc.* 66 F.Supp.2d 1099 (C.D. Cal. 2009).

importantly *UMG* affirms:  <u>Section 512(c)(1)(A)</u> requires that (i) the service provider "<u>not have actual knowledge</u> that the material or an activity using the material on the system or network is infringing"; and (ii) in the absence of actual knowledge, the service provider "is not aware of facts or circumstances from which infringing activity is apparent." <u>If the service provider did acquire actual or apparent knowledge</u>, it must show that it (iii) "act[ed] expeditiously to remove or disable access to the [infringing] material." (Emphasis added).  It certainly is not disputed that by now Photobucket has actual knowledge of each and every *specific copyrighted image* of the Plaintiff, but the Plaintiff's Images are still displayed.

The Plaintiff believes it has provided Photobucket what is required and it is clear that Photobucket knows not only the artist, but also the specific images that are in question.  Photobucket admits to actual knowledge of the infringed "work".  Without Photobucket none of its clients would be able to infringe upon the Plaintiff's works. Photobucket is on clear notice that they and their clients are infringing upon the Plaintiff's works, but say they lack the means to stop or stop their clients.  The DMCA requires Photobucket do so and do so in an expeditious manner.

*Limewire* states:  <u>Direct Infringement</u>

> To establish direct infringement, a plaintiff must show that (1) the plaintiff owns the copyright or copyrights at issue; and (2) the third party infringed the copyrights by unauthorized copying or distribution. See *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 260 (2d Cir. 2005).

> 2. Application

> The evidence establishes that LimeWire users have infringed Plaintiffs' copyrights. First, Plaintiffs have proven that they own the copyrights for the Recordings. (Pl. SUF PP 98-102.) Second, the evidence demonstrates that LimeWire users employed LimeWire to share and download the Recordings

4

without authorization. Plaintiffs have submitted documentation and electronic storage media data showing that LimeWire users share and download unauthorized digital copies of the Recordings through LimeWire. Plaintiffs have provided hard drives that contain digital copies of the Recordings, with electronic evidence that establishes that the Recordings were downloaded by LimeWire users without authorization.

Is not that the case presented here?  Of course, it is!

*LimeWire* states: Inducement of Copyright Infringement

    1. Legal Standard

To establish a claim for inducement, a plaintiff must show that the defendant (1) engaged in purposeful conduct that encouraged copyright infringement, with (2) the intent to encourage such infringement. ("The inducement rule . . . premises liability on purposeful, culpable expression and conduct, and thus does nothing to compromise legitimate commerce or discourage [lawful] innovation . . . ."); ("[T]he distribution of a product can . . . give rise to liability where evidence shows that the distributor intended and encouraged the product to be used to infringe.") (emphasis added) . . .

Discovery has just commenced so it is early in this case, but as of now the Court must see that like *LimeWire* the Plaintiff has presented enough evidence thus far to establish Photobucket is "aware of substantial infringement being committed by its users." *LimeWire, supra.*  That is enough for this Court to find a reasonable likelihood of success on the merits. *Sun Microsystems, Inc. v. Microsoft Corp.*, 188 F.3d 1115, 1119 (9th Cir. 1999) ("Under federal copyright law, … a plaintiff that demonstrates a likelihood of success on the merits of a copyright infringement claim is entitled to a presumption of irreparable harm.").

*LimeWire* states:   Vicarious Copyright Infringement

    1. Legal Standard

A defendant is liable for vicarious copyright infringement if it "profit[s] from direct infringement while declining to exercise a right to stop or limit it." Grokster, 545 U.S. at 930. To establish liability, a plaintiff must show that the defendant "[1] had the right and ability to supervise the infringing activity and . . . [2] has a direct financial interest in such activities." Gershwin, 443 F.2d at 1162.

The first element of the test for vicarious liability is satisfied if the plaintiff proves that the defendant had the ability to supervise or control the third parties' infringing activity and failed to do so. See *Arista Records, Inc. v. Flea World, Inc.*, No. 03-2670, 2006 U.S. Dist. LEXIS 14988, 2006 WL 842883, at *9 (D.N.J. Mar. 31, 2006); *Playboy Enters. v. Webbworld, Inc.*, 968 F. Supp. 1171, 1177 (N.D. Tex. 1997) (finding that operator of website was liable for vicarious infringement for failing to exercise its ability to control use of website for infringement).

The second element of the vicarious infringement test requires showing a "causal relationship between the infringing activity and any financial benefit [the] defendant reaps." See *Ellison v. Robertson*, 357 F.3d 1072, 1079 (9th Cir. 2004). The financial benefit need not be tied directly to sales of the infringing goods. See *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 263 (9th Cir. 1996). It may also be established by evidence showing that users are attracted to a defendant's product because it enables infringement, and that use of the product for infringement financially benefits the defendant. See id.; *Flea World, Inc.*, 2006 U.S. Dist. LEXIS 14988, 2006 WL 842883, at *12.

2. Application

There is substantial evidence that LW had the right and ability to limit the use of its product for infringing purposes, including by (1) implementing filtering; (2) denying access; and (3) supervising and regulating users (Pl. SUF PP 364-368; Add'l SOF P 20; Bildson Decl. P 17). LW has not exercised any meaningful supervisory control over LimeWire users' infringing activity, or provided a legitimate reason for its failure to do so.

Photobucket has control; it can stop Kodak from making product using the Plaintiff's images by delinking itself. But it wants this Court to accept the argument that because it pretends not to know this is going on and Kodak does not inform it of its activities it should not be liable and bothered. Yet it is willing to collect royalties on the sale of products using the Plaintiff's copyrighted works. This does not seem to be the law in *LimeWire*.

<u>Does Scale Matter?</u>

Photobucket seems to argue that this Court must consider its massive size in comparison to the lowly status of a single artist and thus there must be a public policy allowing this behemoth to freely infringe on her work. Instead, this Court should recognize the overwhelming devastation and damages the likes of a Photobucket and a Kodak infringing on her copyrighted works have.

CONCLUSON

This Court should grant the Plaintiff's motion for an Emergency Injunction as there is a reasonably likelihood of her prevailing in this case and it is presumed that she is irreparably harmed by the infringement of Photobucket. After two years of stalling Photobucket finally admits that it cannot not comply with the DMCA and remove or stop their or their clients' infringements. This Court should impose a temporary injunction based upon the admissions of Ms. Dana speaking for Photobucket.

DATED: October 29, 2010                    Respectfully submitted

                                           *Sheila Wolk — Pro. Se*

                                           Sheila Wolk, Pro Se
                                           7 West 87th Street  Apt 2D
                                           New York, NY 10024
                                           212-724-2687
                                           swolk1@nyc.rr.com

**8**

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF NEW YORK

SHEILA WOLK                                    )
          Plaintiff,               )
                                 )
         Vs.                                   )
KODAK  IMAGING NETWORK, INC.,    )
EASTMAN KODAK COMPANY,   and    )
PHOTOBUCKET.COM, INC.               )
           Defendants.         )
                             Civil Case No. 1:10-CV-04135-RWS-THK

## AFFIDAVIT OF SHEILA WOLK

I, Sheila Wolk, hereby depose and say upon my own knowledge the following

(herein where I refer to Kodak I mean both Kodak Imaging Network and Eastman Kodak

Company):

1)     I am the Plaintiff in the instant case.

2)     The Defendant Photobucket has failed to remove or disable the *Images* from its

site.

3)     In particular. Photobucket continues to allow Hennesse2001 to infringe on my

images even though Mr. Norwich states to the contrary in his affirmation.

Attached as Exhibit F are true copies of my Images as displayed on Photobucket

as of October 28, 2010.

4)     Attached hereto as Exhibit G are true and complete copies of Photobucket's

display of various *Images* on its web site as of October 28, 2010.

5)     As of today October 28, 2008 I reconfirmed my *Images* referred to in paragraph 7

of my previous affidavit are still displayed on the Photobucket site.

6)     The Plaintiff's *Images* remain displayed with Internet links to Kodak enabling the

making of various products using the Plaintiff's images.

1

7) In discussions with both Photobucket and Kodak attorneys they have admitted that Photobucket receives a royalty or payment from Kodak when Kodak makes products using images downloaded from Photobucket.

8) The Court or any one, including Photobucket, may *continue* to access my *Images* by merely putting in the following names and/or name plus an identifying word, like fairy. No URL identification is required, no computer jargon location description, is required. Photobucket has actual knowledge of my *Images* and their copyrights. While each and every one of my above *Images* maybe found by this method, for simplicity I have only provided a sampling as an offer of proof. If the Court requests I can provide the same for all *Images*. The following process will allow the Court to find and see my *Images*. First, log into the Photobucket site (Photobucket.com), and, Second type one of the following:

    a) Chameleon

    b) Metamorphosis

    c) Day Unto Night

    d) Gatekeeper

    e) Revelation Angel

    f) Garland Fairy

    g) Eternity Mermaid

    h) Bliss Fairy

9) Further, if the Court desires, it or anyone else, can readily *continue* to make product using any of the above *Images* via the link to Kodak.

Signed under the penalties of perjury this the 29th day of October, 2010.

Sheila Wolk
7 West 87th Street  Apt 2D
New York, NY 10024
212-724-2687
swolk1@nyc.rr.com

**<u>Exhibit F</u>**







# **<u>Exhibit G</u>**



BUY NOW.
GET SOUNDGARDEN'S
NEW ALBUM FREE
WHILE SUPPLIES LAST



Case 1:10-cv-04135-RWS   Document 26   Filed 11/02/10   Page 18 of 22









October 29, 2010


Mr. J. Michael McMahon
Clerk of Court
Civil Division
Daniel Patrick Moynihan
U. S. Courthouse
500 Pearl Street
New York, NY 10007-1312

RE:  Sheila Wolk v. Photobucket et al
        Civil Doc. No.  1:10-CV-04135-RWS-THK


Dear Mr. McMahon:

        Enclosed for filing are the following:

    1)    Plaintiff's Response to Defendant Photobucket's Opposition to Plaintiff's
Motion for Emergency Injunction.
    2)    Affidavit of Sheila Wolk
    3)    Certificate of Service

                                    Sincerely,

                                    Sheila Wolk — Pro Se.
                                    Sheila Wolk, Pro Se
                                    7 West 87th Street Apt 2D
                                    New York, NY 10024
                                    212-724-2687
                                    Swolk1@nyc.rr.com