UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

SHEILA WOLK,

                    Plaintiff,                10 Civ. 4135 (RWS)

     -against-                                <u>OPINION</u>

KODAK IMAGING NETWORK, INC., EASTMAN
KODAK COMPANY, and PHOTOBUCKET.COM,
INC.,

                    Defendants.

------------------------------------X

A P P E A R A N C E S:



          <u>Pro Se</u>

          SHEILA WOLK
          7 West 87th Street
          Apartment 2D
          New York, NY 10024


          <u>Attorneys for Defendant Photobucket.com, Inc.</u>

          NORWICK & SCHAD
          110 East 59th Street
          29th Floor
          New York, NY 10022
          By:  Kenneth P. Norwick, Esq.

          SATTERLEE STEPHENS BURKE & BURKE LLP
          230 Park Avenue
          New York, NY 10169
          By:  Mark Alan Lerner, Esq.

Attorneys for Defendants Kodak Imaging
Network, Inc. and Eastman Kodak Company

NIXON PEABODY LLP
437 Madison Avenue
New York, NY 10022
By:  Mark D. Robins, Esq.

100 Summer Street
Boston, MA 02110
By:  Gina M. McCreadie, Esq.

One Embarcadero Center
Suite 1800
San Francisco, CA 94111
By:  Talley M. Henry, Esq.

**Sweet, D.J.**

Plaintiff Sheila Wolk ("Wolk" or "Plaintiff") has moved for a preliminary injunction preventing Defendant Photobucket.com, Inc. ("Photobucket" or "Defendant") from infringing on her copyrights.  This motion was considered fully submitted on November 3, 2010.  For the following reasons, Plaintiff's motion is denied.

## I.  Summary of Facts

Plaintiff is a visual artist.  Photobucket is an internet service provider ("ISP") which hosts user-generated photos for storage and sharing.  Users have uploaded upwards of 8 billion photos to Photobucket.  Plaintiff claims that copies of her copyrighted images have been uploaded to Photobucket without her permission.  In response, Plaintiff has provided notices requesting that some of these images be taken down from Photobucket.  Several of these notices have complied with the Digital Millennium Copyright Act ("DMCA").  Where Plaintiff has submitted a DMCA-compliant notice, Photobucket has taken down the allegedly infringing photo.  Photobucket also has taken down photos where Plaintiff has sufficiently identified the alleged infringements, even if the notice was not DMCA-compliant.

Despite the removal of these allegedly infringing photos,
Plaintiff contends that more infringing photos remain on
Photobucket's site, though she has not provided DMCA-compliant
notices of these allegedly infringing works to Photobucket.

## II.  **Legal Standards**

In order to obtain a preliminary injunction, a movant
must satisfy a three-part test, including:

> 1) irreparable harm absent injunctive relief; 2)
> either a likelihood of success on the merits, or a
> serious question going to the merits to make them a
> fair ground for trial, with a balance of hardships
> tipping decidedly in the plaintiff's favor; and 3)
> that the public's interest weighs in favor of granting
> an injunction.

Metro Taxicab Bd. of Trade v. City of New York, 615 F.3d
152, 156 (2d Cir. 2010), citing Almontaser v. N.Y. City
Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)(per
curiam); Winter v. Natural Res. Def. Council, Inc., 555
U.S. 7 (2008) (internal quotations omitted).

Plaintiffs are not entitled to a presumption of
irreparable harm if they demonstrate a likelihood of success on
the merits.  Salinger v. Colting, 607 F.3d 68, 80-82 (2d Cir.
2010).  Rather, "plaintiffs must show that, on the facts of

their case, the failure to issue an injunction would actually cause irreparable harm." Id. at 82.


## III. Plaintiff Does Not Demonstrate a Likelihood of Success on the Merits

Through the DMCA, Congress has provided a series of "safe harbors" for ISPs, including for displaying works residing on systems or networks at the direction of users. See Ellison v. Robertson, 357 F.3d 1072, 1076-77 (9th Cir. 2004). Where an ISP meets safe harbor eligibility requirements, it is protected from all monetary and most equitable relief. See Corbis Corp. v. Amazon.com, Inc., 351 F. Supp. 2d 1090, 1098-99 (W.D. Wash. 2004), abrogated on other grounds by Cosmetic Ideas, Inc. v. IAC/Interactivecorp., 606 F.3d 612 (9th Cir. 2010).


In order for Photobucket to fall within the DMCA's safe harbor protection, it must meet the following criteria: (1) it must be a service provider as defined by the statute; (2) it must have adopted and reasonably implemented a policy for the termination in appropriate circumstances of users who are repeat infringers; and, (3) it must accommodate and not interfere with standard technical measures used by copyright owners to identify or protect copyrighted works. See Id. at 1099; Io Group, Inc. v. Veoh Networks, Inc., 586 F. Supp. 2d 1132, 1142-43 (N.D. Cal.

3

2008); <u>Perfect 10, Inc. v. Google, Inc.</u>, 2010 U.S. Dist. LEXIS

75071, *11 (C.D. Cal. Jul. 26, 2010); 17 U.S.C. §§ 512(i) &

(k)(1)(B).


      The DMCA safe harbor provision at issue here is found

at 17 U.S.C. § 512(c), and it protects service providers for

liability "'for infringement of copyright by reason of the

storage at the direction of a user of material that resides on a

system or network controlled or operated by or for the service

provider.'" <u>Io Group</u>, 586 F. Supp. 2d at 1146, quoting 17

U.S.C. § 512(c)(1).


### a.  **Photobucket is a Service Provider under the DMCA**


      A "service provider" is broadly defined under the DMCA

as a "provider of online services or network access, or the

operator of facilities therefor…."  17 U.S.C. § 512(k)(1)(B).

"This definition encompasses a broad variety of Internet

activities." <u>Corbis</u>, 351 F.Supp.2d at 1100; <u>see also</u> <u>In re</u>

<u>Aimster Copyright Litigation</u>, 252 F. Supp. 2d 634, 658 (N.D.

Ill. 2002) ("'service provider' is defined so broadly that [the

court would] have trouble imagining the existence of an online

service that would not fall under the definition…").  Where

courts have dealt with services similar to Photobucket, namely

4

Youtube.com, they have found those companies to be "service providers" under the statute.  See Viacom International, Inc. v. Youtube, Inc., 718 F. Supp. 2d 514, 518 (S.D.N.Y. 2010). Photobucket's hosting and allowance of online sharing of photos and video at the discretion of its users qualifies it as a service provider under the DMCA.

**b.  Photobucket Has Adopted and Reasonably Implemented a Policy for the Termination of Users Who Are Repeat Infringers**

The DMCA requires a safe harbor service provider to demonstrate that it has:

> adopted and reasonably implemented, and informs subscribers and account holders of the service provider's system or network of, a policy that provides or the termination in appropriate circumstances of subscribers and account holders of the service provider's system or network who are repeat infringers.

17 U.S.C. § 512(i)(1)(A); see Perfect 10, Inc. v. CCBill LLC, 488 F.3d 1102, 1109 (9th Cir. 2007).

Photobucket has met this criteria by adopting, informing users of, and implementing a policy addressing the termination of users who repeatedly infringe copyrights.  (Dana. Aff. ¶ 22.)

### c. Photobucket Does Not Interfere with Standard Technical Measures

"Standard technical measures" are defined as "technical measures that are used by copyright owners to identify or protect copyrighted works" and which: (a) "have been developed pursuant to a broad consensus of copyright owners and service providers in an open, fair, voluntary, multi-industry standards process"; (b) "are available to any person on reasonable and nondiscriminatory terms"; and (c) "do not impose substantial costs on service providers or substantial burdens on their systems or networks." Io Group, 586 F. Supp. 2d at 1143, quoting 17 U.S.C. § 512(i)(2)(A)-(C).

Photobucket contends, and Plaintiff does not dispute, that it accommodates and does not interfere with standard technical measures taken by copyright holders to protect their intellectual property. (Dana Aff. ¶ 23.)

### d. The Infringement Alleged Here Invokes DMCA Section 512(c) Safe Harbor Protection

As noted above, 17 U.S.C. § 512(c) protects qualified service providers from liability for infringement which occurs "by reason of the storage at the direction of a user that resides on a system or network controlled or operated by or for

6

the service provider." 17 U.S.C. § 512(c)(1). This safe harbor was not intended by Congress to be limited "to merely storing material," but was meant to encompass a broader range of services offered by internet companies. Io Group, 586 F. Supp. 2d at 1147. However, the safe harbor does not apply to "material that resides on the system or network operated by or for the service provider through its own acts or decisions and not at the discretion of a user." Id. (internal citations and quotations omitted). The protections offered by § 512(c) extend to where the service provider offers online tools permitting users to interact with user-submitted content. See Id. at 1146-47; Viacom, 718 F. Supp. 2d at 527-28 ("Surely the provision of such service, access, and operation of facilities are within the safe harbor when they flow from the material's placement on the provider's system or network: it is inconceivable that they are left exposed to be claimed as unprotected infringements").

   e.  **Photobucket Meets All of the Requirements for Protection under Section 512(c)**

        A service provider may qualify for protection under § 512(c) if it:

        (A)  (i) does not have actual knowledge that the material or an activity using the material on the system or network is infringing;

7

>       (ii) in the absence of such actual knowledge, is
>       not aware of facts or circumstances from which
>       infringing activity is apparent;
>       (iii) upon obtaining such knowledge or awareness,
>       acts expeditiously to remove, or disable access
>       to, the material.
>
> (B)   does not receive a financial benefit directly
>       attributable to the infringing activity, in a
>       case in which the service provider has the right
>       and ability to control such activity; and
>
> (C)   upon notification of claimed infringement as
>       described in paragraph (3), responds
>       expeditiously to remove, or disable access to,
>       the material that is claimed to be infringing or
>       to be the subject of infringing activity.

17 U.S.C. § 512(c)(1)(A)-(C).


In order for ISP to be charged with notice of a claimed infringement, the notice "must be a written communication provided to the designated agent of a service provider that includes substantially the following":

> (A)(i) A physical or electronic signature of a person
> authorized to act on behalf of the owner of an
> exclusive right that is allegedly infringed.
>
> (ii) Identification of the copyrighted work claimed to
> have been infringed, or, if multiple copyrighted works
> at a single online site are covered by a single
> notification, a representative list of such works at
> that site.
>
> (iii) Identification of the material that is claimed
> to be infringing or to be the subject of infringing
> activity and that is to be removed or access to which
> is to be disabled, and information reasonably
> sufficient to permit the service provider to locate
> the material.

8

(iv) Information reasonably sufficient to permit the service provider to contact the complaining party, such as an address, telephone number, and, if available, an electronic mail address at which the complaining party may be contacted.

(v) A statement that the complaining party has a good faith belief that use of the material in the manner complained of is not authorized by the copyright owner, its agent, or the law.

(vi) A statement that the information in the notification is accurate, and under penalty of perjury, that the complaining party is authorized to act on behalf of the owner of an exclusive right that is allegedly infringed.

(B)(i) Subject to clause (ii), a notification from a copyright owner or from a person authorized to act on behalf of the copyright owner that fails to comply substantially with the provisions of subparagraph (A) shall not be considered under paragraph (1)(A) in determining whether a service provider has actual knowledge or is aware of facts or circumstances from which infringing activity is apparent.

(ii) In a case in which the notification that is provided to the service provider's designated agent fails to comply substantially with all the provisions of subparagraph (A) but substantially complies with clauses (ii), (iii), and (iv) of subparagraph (A), clause (i) of this subparagraph applies only if the service provider promptly attempts to contact the person making the notification or takes other reasonable steps to assist in the receipt of notification that substantially complies with all the provisions of subparagraph (A).

17 U.S.C. § 512(c)(3)(A)-(B).


The ISP must also designate an agent to receive notifications of claimed infringement on its website in a

publicly accessible location and with the Copyright Office.   17

U.S.C. § 512(c)(2).

          **1.   Plaintiff's Non-Specific Notices of Infringement**
             **Were Insufficient to Give Photobucket Actual or**
             **Apparent Knowledge of Infringement**

Photobucket has taken down all allegedly infringing

photos where Plaintiff has supplied DMCA-compliant notice.

Plaintiff's motion relies upon her contention that her past

notices also serve as DMCA-compliant notice of other present and

future alleged infringements of the same copyrighted works

posted at different times and at different locations.   In

essence, Plaintiff contends that Photobucket is now aware that

her copyrights are being infringed on its site, and it must now

police its sight to uncover current infringements and prevent

future infringements, without her providing DMCA-compliant

notice in each instance.

Plaintiff's position places a burden on Photobucket

beyond what is required under the DMCA.   Pursuant to §

512(c)(3)(A), DMCA-compliant notice must identify and reasonably

locate the infringing activity in each instance.   As the Court

held in Viacom, "[a]n example of such sufficient information

would be a copy or description of the allegedly infringing

10

material and the so-called 'uniform resource locator' (URL)
(i.e., web site address) which allegedly contains the infringing
material." 718 F. Supp. 2d at 529 (rejecting plaintiff's
complaint where the ISP removed only specific infringing
material designated in DMCA-compliant notices and not other
clips which infringed the same works), quoting House Committee
on Commerce Report, H.R. Rep. No. 105-551 (Part 2), 105th Cong.,
2d Sess., at 55 (July 22, 1998). Plaintiff cites Viacom in
urging the Court to adopt a "common-sense, fact-based approach,
not a formalistic one" in assessing Defendant's notice. (Pl.
Mem. at 4, quoting Viacom, 718 F. Supp. 2d at 521.) However, as
shown above, Viacom indicates that such an approach would still
require Plaintiff to provide the specific location of the
allegedly infringing works in each instance for notice to be
effective. See Viacom, 718 F. Supp. 2d at 523, 529.

The requirement that DMCA-compliant notices identify
and locate specific acts of infringement undermines Plaintiff's
position, as her past notices do not identify and locate other,
and future, infringing activity. The Court does not accept her
invitation to shift the burden from her to Photobucket, as the
underlying purpose of the notice requirements is to "place the
burden of policing copyright infringement – indentifying the
potentially infringing material and adequately documenting

11

infringement – squarely on the owners of the copyright." UMG
Recordings, Inc. v. Veoh Networks Inc., 665 F. Supp. 2d 1099,
1110 (C.D. Cal. 2009), quoting CCBill, 488 F.3d at 1113.  The
Court in CCBill similarly "decline[d] to shift [the] substantial
burden [of policing for infringement] from the copyright owner
to the provider." CCBill, 488 F.3d at 1113.  Furthermore, 17
U.S.C. § 512(m)(1) rejects any attempt to force ISPs to police
their sites for copyright infringement:

> Nothing in this section shall be construed to
> condition the applicability of subsections (a) through
> (d) on--
>
> (1) a service provider monitoring its service or
> affirmatively seeking facts indicating infringing
> activity, except to the extent consistent with a
> standard technical measure complying with the
> provisions of subsection (i)....

See also Viacom, 718 F. Supp. 2d at 524 ("The DMCA is explicit:
it shall not be construed to condition 'safe harbor' protection
on a service provider monitoring its service or affirmatively
seeking facts indicating infringing activity….")(internal
quotations and citations omitted).


        A similar argument was rejected in UMG.  There, the
plaintiff, a rights holder of various music recordings, provided
notice of specific infringements and indicated that it believed
other, non-specified infringement was taking place.  665 F.

12

Supp. 2d at 1109-10.  The plaintiff argued that the ISP "should

have sought out actual knowledge of other infringing videos by

searching its system for all videos by the artists indentified

in the [plaintiff's] notices."  Id. at 1110.  The court rejected

this argument, holding that an "artist's name is not

'information reasonably sufficient to permit the service

provider to locate [infringing] material'" and noting that

searches suggested by the plaintiff produced "false positives"

which should not be taken down.  Id. at 1110 & n. 13 (internal

quotations and citations omitted).


     Without receiving notices identifying and locating

each instance of infringement, Photobucket did not have "actual

knowledge" of the complained of infringements or "aware[ness] of

facts or circumstances from which infringing activity is

apparent."  17 U.S.C. § 512(c)(1)(A)(ii).  See UMG, 665 F. Supp.

2d at 1110 ("notices that fail to comply substantially with §

512(c)(3)(A) 'shall not be considered… in determining whether a

service provider has actual knowledge or is aware of facts or

circumstances from which infringing activity is apparent'"),

quoting 17 U.S.C. § 512(c)(3)(B); Hendrickson v. Ebay, Inc., 165

F. Supp. 2d 1082 (C.D. Cal. 2001) ("The DMCA expressly provides

that if the copyright holder's attempted notification fails to

'comply substantially' with the elements of notification

13

described in subsection (c)(3), that notification shall not be considered when evaluating whether the service provider had actual or constructive knowledge of the infringing activity under the first prong set forth in Section 512(c)(1)"), quoting 17 U.S.C. § 512(c)(3)(B)(i); Viacom, 718 F. Supp. 2d at 524 ("The tenor of the foregoing provisions is that the phrases 'actual knowledge that the material or an activity' is infringing, and 'facts or circumstances' indicating infringing activity, describe knowledge of specific and identifiable infringements of particular individual items.  Mere knowledge of prevalence of such activity in general is not enough.").  Wolk has failed to point to other factors sufficient to establish that Photobucket knew or should have known of the specific infringing activity.

Finally, as noted above, it is undisputed that Photobucket has promptly taken down allegedly infringing materials when notified in compliance with the DMCA, satisfying the third and final factor of § 512(c)(1)(A), as well as § 512(c)(1)(C).

>    **2.  Photobucket Does Not Have the Right and Ability
>         to Control Infringing Activity and Does Not
>         Receive Direct Financial Benefit from Alleged
>         Infringing Activity**

14

Turning to § 512(c)(1)(B), Photobucket may "not receive a financial benefit directly attributable to the infringing activity, in a case in which [it] has the right and ability to control such activity."  17 U.S.C. § 512(c)(1)(B).

Photobucket allows users to upload and share photos and does not maintain the right or ability to control what is posted, including materials which infringe copyrights.  "[T]he right and ability to control infringing activity, 'as the concept is used in the DMCA, cannot simply mean the ability of a service provider to block or remove access to materials posted on its website or stored on its system.'"  Corbis, 351 F. Supp. 2d at 1110, quoting CCBill, 488 F.3d at 1098.  See also Hendrickson, 165 F. Supp. 2d at 1093; Io Group, 586 F. Supp. 2d at 1151.  Rather, such a right and ability to control may take the form of prescreening content, providing extensive advice to users regarding content, and editing user content.  See Corbis, 351 F. Supp. 2d at 1110, citing Perfect 10, Inc. v. Cybernet Ventures, Inc., 213 F. Supp. 2d 1146, 1181-82 (C.D. Cal. 2002).  Photobucket does not engage in such activities, and the size of its website curtails its ability to do so.  (Dana Aff. ¶ 3.)  In Io Group, the Court found that, where hundreds of thousands of videos had been uploaded to a site similar to Photobucket, no reasonable juror could conclude that a comprehensive review of

every file would be feasible.  586 F. Supp. 2d at 1153.
Plaintiff has not pointed to any feasible method by which
Photobucket can prescreen its content.[1]

Furthermore, Photobucket does not receive "a financial
benefit directly attributable to the infringing activity"
Plaintiff seeks to enjoin.  17 U.S.C. § 512(c)(1)(B).  As the
Ninth Circuit has held, where there is no evidence that "[the
service provider] attracted or retained subscriptions because of
the infringement or lost subscriptions because of [its] eventual
obstruction of the infringement," no reasonable jury could
conclude that the service provider received a direct financial
benefit from providing access to the infringing material.
CCBill, 488 F.3d at 1117, citing Ellison, 357 F.3d at 1079.

Plaintiff contends that Photobucket receives financial
gain through its relationship with Kodak, under which it
receives a share of sales derived from Photobucket.com.
However, this financial gain is derived from allowing all users
access to Kodak's services, not directly and specifically from
allowing users to print infringing material.

---

[1] Plaintiff proposes that Photobucket uses video "fingerprinting" technology
to search its website for infringing material.  However, Plaintiff concedes
that such technology is very burdensome to implement and notes Photobucket's
contention that it would not be feasible to use such technology.  (Pl. Reply
Mem. at 2, citing Dana Aff. ¶ 50.)

16

### 3.  Photobucket Has Properly Designated an Agent to Receive Notifications of Claimed Infringements

The final requirement for safe harbor under § 512(c)(2) is for Photobucket to designate an agent for DMCA notifications, to post such agent's contact information on its website in a publicly accessible location, and to provide the Copyright Office with this information.  It is undisputed that Photobucket has complied with this requirement.  (See Dana Aff. ¶ 16.)

### f.  The Limited Injunctive Relief Available under Section 512(j) Does Not Provide For Plaintiff's Requested Relief

Because Photobucket qualifies for § 512(c)'s safe harbor, the relief available to Plaintiff is circumscribed to that provided by § 512(j).  Only three forms of injunctive relief are available against Photobucket:

(i) An order restraining the service provider from providing access to infringing material or activity residing at a particular online site on the provider's system or network.

(ii) An order restraining the service provider from providing access to a subscriber or account holder of the service provider's system or network who is engaging in infringing activity and is identified in the order, by terminating the accounts of the subscriber or account holder that are specified in the order.

17

> (iii) Such other injunctive relief as the court may
> consider necessary to prevent or restrain infringement
> of copyrighted material specified in the order of the
> court at a particular online location, if such relief
> is the least burdensome to the service provider among
> the forms of relief comparably effective for that
> purpose.

17 U.S.C. § 512(j)(1)(A).  Plaintiff appears to seek relief

under (i) and (iii).


     An injunction under (i), which prevents Photobucket

from "providing access to infringing material residing at a

particular online site on the provider's system or network,"

essentially requires Photobucket to block access to infringing

material when given proper notice.  17 U.S.C. § 512(j)(1)(A)(i);

see Nimmer on Copyright, § 12B.11 (2010), citing Report of the

Committee on the Judiciary, H.R. Rep. No. 105-551 (Part 2),

105th Cong., 2d Sess., at 62 (July 22, 1998).  It is undisputed

Photobucket is already removing allegedly infringing works when

given DMCA-compliant notice so that there is no need for an

injunction requiring it to do the same.


     The third form of injunction under § 512(j)(1)(A) is a

broader catch-all provision, but it requires that the injunction

point to "a particular online location" and that the relief be

the "least burdensome to the service provider" among other

effective forms of relief.  Plaintiff's argument is that she need not provide specific online locations for infringements of her copyrights.  Rather, Photobucket is to search for infringing activity itself, a task which both parties acknowledge to be burdensome.  The injunctive relief Plaintiff seeks does not comport to § 512(j)(1)(A)(iii).

## IV.   Plaintiff Fails to Satisfy the Other Criteria for a Preliminary Injunction

Apart from being unable to establish a likelihood of success on the merits, Plaintiff does not demonstrate irreparable harm, that the balance of hardships falls in her favor, or that public policy supports her sought-after relief.

### a.   Plaintiff Fails to Demonstrate Irreparable Harm

Plaintiff relies on a presumption of irreparable harm for copyright plaintiffs, citing Johnson Controls, Inc. v. Phoenix Control Sys., Inc., 886 F.2d 1173, 1174 (9th Cir. 1989).  However, this presumption has been abrogated.  Salinger, 607 F.3d at 75.  This court has found the following:

> Irreparable harm is the "single most important prerequisite" for a preliminary injunction to issue. Faiveley Transp. Malmo AB v. Wabtec Corp., 559 F.3d 110, 118 (2d Cir. 2009) (citation omitted).  The plaintiff must demonstrate that, without a preliminary

19

> injunction, he will suffer an injury that is "neither
> remote nor speculative, but actual and imminent, and
> one that cannot be remedied if a court waits until the
> end of trial to resolve the harm." Id. (citation
> omitted). "Where there is an adequate remedy at law,
> such as an award of money damages, injunctions are
> unavailable except in extraordinary circumstances."
> Id. (citation omitted). Thus, the "relevant harm is
> the harm that (a) occurs to the parties' legal
> interests and (b) cannot be remedied after a final
> adjudication, whether by damages or a permanent
> injunction." Salinger, 607 F.3d at 81. A court must
> not presume that a plaintiff will suffer irreparable
> harm; it must "actually consider the injury the
> plaintiff will suffer if he or she loses on the
> preliminary injunction but ultimately prevails on the
> merits." Id. at 80.

Morgan Stanley & Co. v. Seghers, 2010 U.S. Dist. LEXIS
107686, at *15-16 (S.D.N.Y. Oct. 8, 2010).  Plaintiff has
not pointed to any damages which cannot be remedied after a
final adjudication.


        Furthermore, Plaintiff's delay in bringing her motion
for a preliminary injunction belies her claim of irreparable
harm.  Salinger, 607 F.3d at 75-76.  "An unreasonable delay
suggests that the plaintiff may have acquiesced in the
infringing activity or that any harm suffered is not so severe
as to be 'irreparable.'"  Feiner v. Turner Entertainment Co., 98
F.3d 33, 34 (2d Cir. 1996) (18 month delay in bringing copyright
infringement suit rebutted presumption of irreparable harm),
abrogated on other grounds by Salinger, 607 F.3d at 75.
According to Plaintiff, many of the alleged infringements have

been on Photobucket's site since 2008.   (Pl. Mem. at 3; Wolk

Dep., p. 325.)


### b.   The Balance of Hardships Does Not Weigh in Plaintiff's Favor

Where a plaintiff has failed to demonstrated a

likelihood of success on the merits buts has demonstrated

"sufficiently serious questions going to the merits," the Court

should issue an injunction where the "balance of hardship tip[s]

decidedly in the plaintiff's favor."   Salinger, 607 F.3d at 79-

80 (citations omitted).   Due to Photobucket's eligibility for

safe harbor protections under the DMCA, Plaintiff has not raised

sufficiently serious questions going to the merits.   Plaintiff

also fails to show that the balance of hardships tips in her

favor.


Plaintiff contends that failure to grant her relief

will require her to find infringing activity on Photobucket's

site and report it to them through DMCA-compliant notices.   She

contends that this will be difficult and labor intensive.

However, the purpose of her motion is to shift that same burden

to Photobucket, without Photobucket having the benefit of

knowing whether Plaintiff has authorized any of her works to be

displayed on its site.   While, as Plaintiff points out,

21

Photobucket is the larger enterprise, the burden it would bear
in having to continually search its site for infringing activity
is heavy.  Furthermore, saddling Photobucket with this
responsibility is out of step with the DMCA, which, as noted
above, places the burden of uncovering infringing activity on
copyright holders.

### c.  The Public Interest Would Be Disserved By Issuing the Injunction

Finally, the Court must consider whether the "public's
interest weighs in favor of granting an injunction." Metro
Taxicab, 615 F.3d at 156, citing Winter, 555 U.S. 7.

As noted above, the DMCA provides a scheme under which
copyright holders notify ISPs of alleged infringing material on
their sites, and the ISPs act to remove such material.  To the
extent that Plaintiff has availed herself of this scheme, it has
worked.  However, Plaintiff seeks to shift the burden of finding
infringing material to the ISP.  Such a shift would render ISPs
responsible for searching their sites for all infringing
materials, a significant task.  Plaintiff acknowledges that it
would be expensive for Photobucket to search for her
intellectual property, much less all other copyrighted works.
(Pl. Reply Mem. at 2.)  Placing such a debilitating burden on

22

ISPs would defy the purpose of the DMCA, which was "to facilitate the growth of electronic commerce, not squelch it." Io Group, 586 F. Supp. 2d at 1154, citing S. Rep. No. 105-190, 105th Cong., 2d Sess., at 1-2 (May 11, 1998).

**Conclusion**

For the foregoing reasons, Plaintiff's motion for a preliminary injunction is denied.

It is so ordered.

New York, NY
March 17, 2011

_____
ROBERT W. SWEET
U.S.D.J.